BAST, Respondent, vs. MARSDEN, Appellant.*

*December 6, 1951—January 8, 1952.*

---

* Motion for rehearing denied, with $25 costs, on March 4, 1952.

460

For the appellant there were briefs by *Toebaas, Hart, Kraege & Jackman* and *Carl Flom,* all of Madison, and oral argument by *Mr. W. L. Jackman* and *Mr. Flom.*

For the respondent there was a brief by *Curkeet & Curkeet* of Madison, and oral argument by *William R. Curkeet, Sr.,* and *William R. Curkeet, Jr.*

FRITZ, C. J.   In 1943 the defendant, Dr. Wendell H. Marsden, treated the plaintiff, Louis W. Bast, for an injury to his right arm, and on May 7, 1949, Bast consulted Marsden with a complaint that the arm was stiff and sore. An X ray taken showed an exostosis, which is a bony growth or spur that juts out from the normal contour of a bone and can occur anywhere in a bone where there is a bony irritation. It was the result of plaintiff's occupation and his using a hammer and saw, and it disturbed the normal function of plaintiff's arm.

On May 20, 1949, Marsden operated on the arm to remove the exostosis. In the course of the operation, Marsden, after locating the position of the exostosis by use of the X ray, made an incision just through the skin with the sharp edge of the scalpel, and he found an exostosis of the right radius with several spurs about one inch below the head of the radius and elevated about one-fourth inch above the medial border of the radius and extending along the radius about

one inch. Marsden testified that without using the sharp edge of the scalpel he separated the muscles immediately beneath the skin without disturbing their structure at all; that the first muscle it was necessary to disturb structurally was the supinator, located directly over the exostosis, and this muscle was separated in the direction of its fibers, which was at right angles to the incision, to secure exposure of the exostosis; and that said fibers were not cut, but were separated with the blunt end of the scalpel, so as to avoid disturbing the function of the muscle as little as possible.

Marsden testified he was aware of the usual position of the deep radial nerve as located in the muscle belly of the supinator muscle and thus planned the operation; that the radial nerve comes down the humerus and ends near the elbow by dividing into two branches; one, a sensory branch to the skin, and the other, a motor nerve or muscular branch known as the posterior interosseous; that just below the elbow the posterior interosseous branch goes through the supinator muscle and his intention was to avoid exposing the deep radial nerve if possible, and if it came in his view, to retract it and stay away from it; and that if it had been in the cleavage of the supinator muscle it would have been in Marsden's field of view and he would have seen it; but he did not see it. Marsden and several physicians testified that the radial nerve was about one-quarter inch in diameter and slightly flattened. Marsden testified the absence of the nerve from his view, although he was watching for it, as he dissected through the supinator muscle, indicated to him that the nerve was not in the path of the operation.

During the operation Marsden did not know that the deep branch of the radial nerve had been injured and nothing that occurred during the operation led him to believe that it had been injured; and when he did not see the nerve in the course of the operation he assumed it was retracted with the portion

of the supinator muscle which was held aside by retractors; and that had it been in its normal position it was his opinion that it would have been retracted as he planned the operation. Dr. Grumke assisted Marsden by holding the retractors in the position Marsden placed them, but Grumke was not so situated that he could see in the wound or see the exostosis.

The day after the operation there was swelling at the site of the operation which persisted for a week and there was weakness of plaintiff's hand which Marsden attributed to the swelling and trauma incident to the operation. When that weakness persisted Marsden did not conclude the nerve had been severed, but believed it was due to temporary swelling or trauma or bruising to the nerve.

In July, 1949, plaintiff was examined by Doctor Erickson, a neurosurgeon, and three physicians. Erickson diagnosed plaintiff's trouble as an injury to the interosseous (deep) branch of the radial nerve, which supplies the muscles which extend the fingers and wrist; and he operated on plaintiff on February 23, 1950, for the purpose of exploring that nerve. He found the nerve was interrupted and sutured the ends. The previous scar was excised and the scar tissue was followed down between the muscles running down from the region of the elbow. This scar tissue was removed to expose the ends of the posterior interosseous nerve, down to the supinator brevis muscle. By further dissection the lower portion of the nerve was found but not in its usual position, and was found to be completely interrupted. There were two ends with scar tissue between them; and on the upper portion of the nerve there was a neuroma which may result from injury of various sorts. The neuroma was cut off by Erickson and the nerve ends were sutured, and an X ray shows the nerve is still together.

At the conclusion of the trial the jury found: (1) That Marsden was causally negligent as to the *lookout* he kept for the radial nerve; but (2) that he was not negligent with

respect to the manner in which he used his instruments during the operation he performed. Upon the jury's finding that Marsden was causally negligent as to the lookout he kept for the radial nerve, the court entered judgment against the defendant for the plaintiff's recovery of the damages assessed by the jury.

There were conflicts in the testimony of the physicians as to whether or not in their opinion Marsden used such care and skill as a competent physician and surgeon in Marsden's position would ordinarily use. In his argument to the jury, the defendant's attorney stated: "Dr. Erickson says, and I believe honestly, that the nerve was divided when he found it. Now, there is no question about it and we don't question it." On the trial there was ample evidence which the jury could consider credible and sufficient to warrant a finding that the radial nerve in question was severed by an incision made by the defendant, and that with the exercise of due care by him the particular cleavage plane he dissected through the nerve would be in his field of vision.

There was credible evidence that when performing an operation in the vicinity of such larger nerves, a physician should be more careful in his dissection so that if such nerves appear in sight, he can see and recognize them, and stay away from them. Dr. Erickson testified that in the area in which he subsequently operated, the radial nerve was readily distinguishable from surrounding tissue and that a doctor should be able to recognize that nerve. And the defendant testified that the interosseous branch of the radial nerve should be readily visible if exposed; that it is a little clearer and shinier than other tissues; and that you would expect to be able to distinguish nerve tissue from other tissue surrounding it; that it is clear and shiny.

Consequently, in view of Dr. Marsden's failure to see the radial nerve—which is the specific act of causal negligence found by the jury—although, as he testified, he knew that

it was in the area in which he was operating and that his vision was not obscured by blood and the nerve would be readily distinguishable from the surrounding tissues; and in view of the evidence that after Dr. Marsden had operated, Dr. Erickson found the nerve in the scar tissue of Dr. Marsden's operation, and in two pieces after the fact of its severance was proven, there was clearly warranted the jury's verdict and the judgment entered in this action.

*By the Court.*—Judgment affirmed.